IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BLYTHE TAPLIN,** </br> **On behalf of Rogers Lacaze**, </br> The Capital Appeals Project </br> 636 Baronne Street </br> New Orleans, LA  70113-1004 </br></br> Plaintiffs, </br></br> v. </br></br> **UNITED STATES DEPARTMENT** </br> **OF JUSTICE** </br> 950 Pennsylvania Avenue, NW </br> Washington, DC  20530 </br></br> and </br></br> **FEDERAL BUREAU OF INVESTIGATION** </br> 935 Pennsylvania Avenue, NW </br> Washington, D.C. 20535-0001 </br></br> Defendants. | CIVIL ACTION |

**COMPLAINT FOR INJUNCTIVE RELIEF**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, and seeking the expedited processing and release of agency records requested by Plaintiff from Defendants.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter, pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E).

2. Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3. Plaintiff Blythe Taplin is an attorney at the Capital Appeals Project in New Orleans, Louisiana, who, on behalf of her client, Rogers Lacaze, has requested and has been refused access to records of the United States Department of Justice ("Department of Justice" or "DOJ") and the Federal Bureau of Investigation ("FBI"), one of its components. She has represented Mr. Lacaze in state post-conviction proceedings since 2009.

4. Mr. Lacaze is an adult resident of the Eastern District of Louisiana. He has been incarcerated on Death Row of the Louisiana State Penitentiary in Angola, Louisiana, since 1995. Rogers Lacaze was 18 years old with a 71 IQ and no prior criminal convictions when he was convicted and sentenced to death for this offense.

5. Defendant United States Department of Justice ("Department of Justice" or "DOJ") is a Department of the Executive Branch of the United States government. DOJ operates throughout the United States, including within the State of Louisiana. DOJ is an agency within the meaning of 5 U.S.C.§ 552(f), is subject to the requirements of the FOIA, and controls the FBI. Plaintiff sent her FOIA request to the DOJ and it has improperly withheld the records at issue here.

6. Defendant Federal Bureau of Investigation ("FBI") is an agency of the United States government and a division of the Department of Justice, operating throughout the United States, including within the State of Louisiana. FBI is an agency within the meaning of 5 U.S.C.

§552(f) and is subject to the requirements of the FOIA. Plaintiff sent her FOIA request to the FBI and it has improperly withheld the records at issue here.

## FACTUAL ALLEGATIONS

### Background

7. Mr. Lacaze was convicted of three counts of first degree murder and sentenced to death in July 1995 in state court in New Orleans, Louisiana. *State v. Rogers Lacaze*, No. 375-992.

8. On March 4, 1995, two civilians, Cuong Vu and Ha Vu, and New Orleans Police Officer Ronald Williams were shot and killed at the Kim Anh restaurant in New Orleans, Louisiana. Cuong Vu and Ha Vu were restaurant employees and the children of the owners of the Kim Anh restaurant. Officer Williams worked on an off duty "paid detail" as a security guard at the restaurant. The management of "paid details" by New Orleans Police Officers has been the source of significant problems for decades.

9. All three victims were killed with the same nine millimeter weapon.

10. Antoinette Frank, a New Orleans Police Officer, and Rogers Lacaze were arrested within hours of the offense and charged with first-degree murder. Along with Officer Williams, Ms. Frank had also worked as a security guard at the restaurant.

11. The State's allegation was that Ms. Frank and Mr. Lacaze robbed the Kim Anh restaurant and shot all three victims.

12. Mr. Lacaze had been in the restaurant before the robbery, and the State alleged that he was in league with Ms. Frank.

13. Neither the money the witnesses alleged was stolen from the restaurant nor the murder weapon were recovered from either defendant.

3

14. Ms. Frank's and Mr. Lacaze's cases were severed for trial, with Mr. Lacaze's trial proceeding first. At Mr. Lacaze's trial, the State argued that Mr. Lacaze was the likely person who shot all three victims.

15. At Mr. Lacaze's trial, the State did not present any physical evidence linking him to the crime scene. The jury based its verdict on three questionable identifications and a coerced confession from Mr. Lacaze.

16. At trial, Mr. Lacaze asserted that he was innocent of the charges, and that Antoinette Frank's brother, Adam Frank Jr. ("Adam Frank" or "Mr. Frank"), was her true accomplice. Mr. Frank was not produced at trial.[1]

17. New Orleans Police Officer Stanley Morlier was called as a witness by Mr. Lacaze's counsel and questioned about confrontations between Officer Williams and Adam Frank, and Antoinette Frank prior to the murders. Officer Morlier denied that any such confrontations occurred. This was one of many instances in which the State failed to disclose exculpatory evidence to Mr. Lacaze.

18. Indeed, at Antoinette Frank's trial three months after Mr. Lacaze's trial, Officer Morlier testified that he and Officer Williams were forced to eject Adam Frank Jr. from the Kim Anh restaurant "for insurance reasons and all, and for the protection of the Vu family." Officer Morlier further testified that Ms. Frank confronted him shortly after this incident, stating, "[Y]ou tell Ronnie Williams that when he messes with my brother he's messing with me, and I'll take

---

[1] Mr. Lacaze testified that investigators beat him during his interrogation, and that New Orleans Police Department ("NOPD") officers had sought to conceal their own criminal involvement by rapidly focusing their investigation on him. Indeed, at the time of this offense, NOPD was embroiled in scandal following an FBI undercover investigation into the department's corruption ("Operation Shattered Shield"). As part of that investigation, the FBI conducted a sting operation in which it hired NOPD officers to work as off-duty security guards at a warehouse holding illegal drugs for shipment.

him out." This evidence was contradictory to the testimony of this same witness at Mr. Lacaze's trial. Mr. Lacaze was not aware of these facts until after Officer Morlier testified in Ms. Frank's trial.

19. Captain John Landry was also called by the defense at Mr. Lacaze's trial to testify about his department's investigation into Adam Frank. Captain Landry testified that he had discovered Adam Frank was wanted on charges of attempted manslaughter only two months before this crime, but he did not provide any further details or explanation. Through post-conviction discovery, Mr. Lacaze obtained a report by Officer Landry that reveals the fact that, before the offense, two officers from the New Orleans Police Department ("NOPD") were sent to Ms. Frank's home to conduct a "wanted check for her brother." Ms. Frank was warned that any attempt to conceal her brother would be "construed as a criminal violation, to wit, harboring a fugitive." This evidence was not disclosed to Mr. Lacaze.

20. At Ms. Frank's trial, the State alleged that she had committed the murders with a nine millimeter Beretta, model 92G she had acquired from the NOPD evidence and property room. New Orleans Police Officer David Talley gave statements to NOPD officers that he had obtained the weapon for Ms. Frank through a court-order signed by Orleans Parish District Court Judge Frank Marullo.[2] Two weeks before the murders, Ms. Frank claimed that the weapon was stolen from her car. Officer Talley provided testimony about these facts at Ms. Frank's trial. This evidence was not disclosed to Mr. Lacaze. Thus, he was not able to demonstrate that the likely murder weapon was issued to Antoinette Frank, not him, despite the State's theory that he was the shooter.

---

[2] Judge Frank Marullo presided over both Mr. Lacaze's and Ms. Frank's capital trials, but failed to disclose to Mr. Lacaze that Antoinette Frank had obtained the likely murder weapon through a court order bearing his signature.

5

21. Documentation that firearms were being distributed to individual officers from the NOPD Central Evidence and Property Division was never released to the public.

22. Prior to both Mr. Lacaze's and Ms. Frank's trials, Officer Talley was extensively questioned by NOPD officers about a number of important issues in the case, including his knowledge of Adam Frank's connections to the Kim Anh restaurant , Adam Frank's access to guns from the Central Evidence and Property Division, and Adam Frank's whereabouts at the time of the Kim Anh restaurant murders.  NOPD officers specifically asked Talley if Adam Frank was working as a security guard at the Kim Anh Restaurant and if he was ejected from that restaurant by Officer Williams. NOPD officers further inquired if Officer Talley knew whether Antoinette Frank had given her nine millimeter Beretta to her brother Adam. While Officer Talley admitted he knew Adam Frank, he denied having any knowledge that Antoinette Frank had transferred to her brother the weapon she obtained from the NOPD evidence room. At that time, NOPD investigators warned Officer Talley that if his statements "would prove to be false, there's, there's a possibility of your being criminally involved in this [triple-homicide]."

23. The State never revealed to Mr. Lacaze that the NOPD was investigating the same man Mr. Lacaze contended committed the murder in connection with the possession of the murder weapon.  Indeed, none of these statements to and from Officer Talley were disclosed to Mr. Lacaze before or at his trial.

24. As part of Mr. Lacaze's post-conviction proceedings, Plaintiff, Mr. Lacaze's counsel, discovered a number of facts about Adam Frank, Jr., that were consistent with Mr. Lacaze's defense that Mr. Frank was involved in the Kim Anh murders.

25. First, in 1998, three years after Mr. Lacaze's conviction, Adam Frank, Jr. was arrested in Rayville, Louisiana, where he had been living under the name "Keith Jackson."

6

Reports from Mr. Frank's arrest reveal that he was originally stopped because witnesses had heard him "bragging about killing a New Orleans Police officer." The next day, Adam Frank escaped from custody.

26. Second, after Mr. Frank's escape, the Ouachita Parish Sheriff's Department released a notice that he was at large, specifically noting that Adam Frank "is also wanted by DPS & CORR Probation & Parole, Opelousas Police Dept., and the *FBI in New Orleans* [emphasis added]." That notice identifies Mr. Frank's FBI number as 246307KA2.

27. Third, when Mr. Frank was apprehended one month later, he had a nine millimeter Beretta, model 92G in his possession. This was the same caliber, make, and model as the weapon that Ms. Frank reported stolen and which the State alleged was used to commit the 1995 murders.

28. The serial number on the gun recovered from Adam Frank was rubbed off, so the Ouachita Sheriff's Department sent it to the crime lab to be raised. The gun was analyzed and a partial serial number was recovered: BER1???57Z. This partial serial number matches exactly the number of the gun the State alleged to be the murder weapon: BER137257Z.

29. Fourth, as part of Mr. Lacaze's post-conviction proceedings, the Orleans Parish District Attorney's Office was required to produce documents to Mr. Lacaze. On January 10, 2009, it presented a list of documents deemed "privileged" and withheld from the case file turned over to Mr. Lacaze. Included in that list were six pages identified as *"Adam Frank, Jr.'s FBI rap sheet."*

30. Mr. Frank is currently incarcerated at the Louisiana State Penitentiary following his conviction of an unrelated armed robbery.

31.     Rogers Lacaze's capital post-conviction petition is currently pending in the Orleans Parish Criminal District Court.  He asserts that he is actually innocent of this crime.  He also argues that the government failed to disclose favorable evidence at trial in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).

**The FOIA Request**

32.     On February 24, 2012, on behalf of her client Mr. Lacaze, Plaintiff filed a FOIA request seeking copies of all documents and tangible items involving any investigation or background information regarding Adam Joseph Frank, Jr. (using his real name as well as a number of aliases) from the DOJ and the FBI. This request included any record of (or claim of statistical accomplishment concerning) communication between state or local officials and the FBI or Department of Justice regarding an investigation into Adam Frank Jr.

33.     The FOIA request made clear that the information was being sought as part of Plaintiff's representation of Mr. Lacaze, a death row inmate, and that Plaintiff was seeking information that would corroborate Mr. Lacaze's claim of actual innocence.

34.     On March 14, 2012, the FBI denied Mr. Lacaze's request for records concerning Adam Joseph Frank, Jr., asserting that the records were generally exempt from disclosure under 5 U.S.C. §§ 552(a), 552 (b)(6), and 552(b)(7)(C).

35.     Specifically, the FBI responded to Plaintiff's request with a *Glomar* response, neither confirming nor denying the existence of responsive records and refusing to release any records regarding a third party without "express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records."

36. On March 21, 2012, Plaintiff filed an administrative appeal of the FBI's decision with the DOJ Office of Information Policy ("DOJ OIP").

37. On September 24, 2012, Sean R. O'Neill of the Office of Information Policy denied Plaintiff's administrative appeal from the action of the Federal Bureau of Investigation, citing 5 U.S.C. § 552(b)(7)(C) as the sole basis for this denial of her appeal and affirming the FBI's failure to provide any records in response to Plaintiff's FOIA request.

38. In her original FOIA request and administrative appeal, Plaintiff asserted two compelling public interest grounds that outweighed any privacy interests Mr. Frank may have in records maintained by the FBI. First, citing *Roth v. United States*, 642 F.3d 1161, 1181 (D.C. Cir. 2011), she noted that such potential privacy interests are outweighed by the public's "compelling interest in knowing whether the FBI is refusing to disclose information that could help exonerate" a death row inmate. Second, citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 173 (2004), Plaintiff asserted that there is a significant public interest in disclosing information that may show "the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties."

39. In improperly denying Plaintiff's administrative appeal, the DOJ OIP conflated the two public interest arguments Plaintiff advanced, contending that because Plaintiff had not produced "evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred" she could not meet the *Nat'l Archives* test. Setting aside the propriety of this conclusion, the DOJ OIP completely failed to consider Plaintiff's *first* public interest argument regarding whether the FBI was unwilling to disclose information that would potentially exonerate a death row inmate, regardless of whether such information was evidence of government impropriety.

**CLAIM FOR RELIEF**

40. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 to 39.

41. Defendants have wrongfully withheld the requested agency records.

42. Upon information and belief, the FBI and/or Department of Justice have possession of records that Plaintiff believes contain evidence of government misconduct and evidence that could exculpate a death row defendant.

43. Plaintiff's request demonstrates a significant public interest in the disclosure of records that may exonerate a defendant on death row.

44. Plaintiff's request also demonstrates a significant public interest in knowing whether the FBI is refusing to disclose information that could help a defendant on death row prove his innocence.

45. Plaintiff has exhausted her administrative remedies as provided in the Freedom of Information Act and agency regulations, with respect to Defendants' wrongful withholding of the requested records.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays that this Court: for the following relief:

a) A judgment declaring that the Defendants' refusal to produce the documents at issue is improper;

b) An order directing Defendants to process immediately the requested records in their entirety.

c)  An order directing Defendants that upon completion of such expedited processing, to disclose the requested records in their entirety and to make copies available to Plaintiff.

d)  An order providing for expeditious proceedings in this action.

e)  In the alternative, an order that Defendants produce an index of the requested documents, produce the documents to the Court for the Court to conduct an *in camera* review and provide the documents to Plaintiff if production is required under FOIA;

f)  Award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 USC § 552(a)(4)(E); and

g)  Grant such other and further relief as this the Court may deem just and proper

Respectfully submitted,

/s/ Mary Lou Soller

Mark J. Rochon (D.C. Bar 376042)
Mary Lou Soller (D.C. Bar 246231)
Brian A. Hill (D.C. Bar 456086)
Matthew T. Reinhard (D.C. Bar 47491)
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington, DC  20016-6701
(202) 626-5800 (telephone)
(202) 626-5801 (facsimile)

11